PARKER, District Judge. On the question raised by this motion, the court holds the law to be, that, when jurisdiction has once attached, no subsequent change in the relation or condition of the parties in the progress of the cause will deprive the court of jurisdiction over the cause, or over any proceeding touching the execution of the judgment. It is clear that the jurisdiction depends on the state of things existing at the time the action is brought, and that after it is once vested it cannot be ousted by subsequent events. Now, if a suit is brought in this court by a non-citizen of the state against a citizen of the state and resident of the district, and the non-citizen afterwards becomes a citizen of the state pending the suit, or the resident of the district becomes a non-resident before the determination thereof, neither one of these changes in the status of the parties will divest the court of jurisdiction, because the same has attached, and the condition or relation of the parties at the time of bringing the suit is the test of jurisdiction.

The case of this county presents a case of a change of residence from this judicial district to another by operation of law since this suit was brought, and after jurisdiction had attached. This principle is directly decided in the case of U. S. v. Dawson, 15 How. [56 U. S.] 467. This was a case that went to the supreme court of the United States from this district, or, rather, what had then just become the eastern district of this state. A new district had, in the year 1851, been created, called the western district of Arkansas, consisting of nine counties in the state and the Indian country, and a case was pending in the old district from the Indian country. It was claimed for the defendant that he could not be tried in the eastern district, but that his case must be sent to the other district. The court says: "We do not, therefore, perceive any objection to the jurisdiction of these courts over cases pending at the time the change took place, civil and criminal, inasmuch as the erection of the new district was not intended to affect it in respect to such cases, nor has it, in our judgment, necessarily operated to deprive them of it." The law was silent as to cases pending in the old district. Therefore, the effect of the decision is, that, unless the law changing the district provides that pending cases shall be removed to the new district, the mere passage of the law does not work a removal.

The point raised by the motion in this case is directly decided in the case of Rhoades v. Selin [Case No. 11,740]. The same question is inferentially decided in Dunn v. Clark, 8 Pet. [33 U. S.] 1; Mollan v. Torrance, 9 Wheat. [22 U. S.] 537; Morgan's Heirs v. Morgan, 2 Wheat. [15 U. S.] 110; Hatfield v. Bushnell [Case No. 6,211]. The law in this case being silent as to cases pending in the district court for the western district of Arkansas against counties which have been placed by its terms in the eastern district, and against persons living in these counties, they must be tried in that court whose jurisdiction had attached at the time of the passage of the law. Congress, of course, could have provided for a transfer of these cases. It has not done so. The mere passage of the law does not work a removal of the cases. Motion overruled.

---

CULVERSON (GIMMY v.). See Case No. 5,-454.

CULVERTSON (PARKER v.). See Case No. 10,732.

---

## Case No. 3,470.

### The CUMBERLAND.

District Court, D. Massachusetts. 1815.

SALVAGE—OWNER OF RESCUING VESSEL—COMPENSATION.

[Cited in The Henry Ewbank, Case No. 6,-376, and in a note to The Waterloo, Id. 17,-257. to the point that, in cases of extraordinary merit or extraordinary peril to the rescuing ship, the owner of the latter should be allowed a moiety of the salvage.]

---

CUMBERLAND COTTON CO. (WHIPPLE v.). See Case No. 17,515.

CUMBERLAND MANUF'G CO. (WHIPPLE v.). See Case No. 17,516.

---

## Case No. 3,471.

### The CUMBRIA.

[Nowhere reported; opinion not now accessible.]

---

## Case No. 3,472.

### The CUMBRIA.

[3 Ben. 334.][1]

District Court, S. D. New York. June Term, 1869.[2]

COLLISION IN HAMPTON ROADS BETWEEN STEAMERS—PARALLEL COURSES—LOOKOUT.

1. Where two steamers, the F. bound into Hampton Roads, and the C. bound out, were approaching a guardship at which each was required to report, both vessels heading on courses nearly parallel with the keel of the guardship, and the C. had the guardship on her starboard side, and made the white and red lights of the F. on her port bow, and the F. then changed her course, by starboarding, and slowed and stopped her engine for the purpose of speaking the guardship, and blew two blasts of her whistle, but the C. kept on, and struck the F. on her starboard side and sank her: *Held,* that the F. was in fault in not keeping a proper lookout, and also in changing her course across the bows of the C.

2. It was her duty to pass to the right, and let the C. pass between her and the guardship.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court (case unreported).]